UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------
ROMAN OCHOA,

                **Plaintiff,**            16-cv-2852 (JGK)

      - v.-                  MEMORANDUM OPINION
                                   AND ORDER

WILLIAM BRATTON ET AL.,

              **Defendants.**
-------------------------------------
**JOHN G. KOELTL, District Judge:**

The plaintiff, Roman Ochoa, an inmate at the Wyoming
Correctional Facility in Attica, New York, proceeding pro se,
brings this lawsuit against the City of New York (the "City"),[1]
former New York City Police Commissioner William Bratton, law
enforcement officers Richard Turk, Keith Perisco, Daniel Evans,
Steven Barone, and Peter Kummerfeldt (collectively, the
"defendants")[2] alleging constitutional, statutory, and New York

---

[1] Although the City is not named as a defendant, the plaintiff
names the "City of New York, through its former [police]
Commissioner, William Bratton." Second Am. Compl. ¶ 10. Because
the plaintiff also purports to bring a "Monell claim," with
respect to former New York City Police Commissioner William
Bratton, the Court construes certain of the plaintiff's claims
to be asserted against the City.

[2] In their motion to dismiss, the law enforcement officers assert
that Perisco is an agent of Homeland Security Investigations;
Turk, Barone, and Evans were deputized as Task Force Officers
with the U.S. Drug Enforcement Administration ("DEA") at the
relevant time; and Kummerfeldt was a Special Agent with the DEA.
The plaintiff alleges that each of these defendants is a member
of the joint task force comprised of members of the "Department
of Homeland Security, Drug Enforcement [Administration], and

State common law causes of action relating to Ochoa's arrest on or around November 19, 2015 in the Bronx, New York, and the seizure of his personal property at that time. Primarily, Ochoa claims that property seized in conjunction with his arrest was never vouchered or returned to him by the arresting officers, and that then Commissioner Bratton and the City failed properly to train and supervise those officers. Ochoa has twice amended the Complaint in this case. The defendants now move to dismiss the Second Amended Complaint ("SAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the SAC are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the SAC if the plaintiff has stated "enough facts to state a claim to relief that is

---

Drug Task Force of the City of New York." Second Am. Compl. ¶¶ 5-9.

plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." <u>Id.</u>

When faced with a pro se complaint, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." <u>Chavis v. Chappius</u>, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted). "Even in a *pro se* case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (citation omitted). Thus, although the Court is "obligated to draw the most favorable inferences" that the SAC supports, it "cannot invent factual allegations that [the plaintiff] has not pled." <u>Id.</u>

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the SAC, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that

3

the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002); see also Estevez v. City of New York, No. 16-cv-00073, 2017 WL 1167379, at *1-2 (S.D.N.Y. Mar. 28, 2017).

## II.

The following facts alleged in the SAC are accepted as true for the purposes of this motion to dismiss.

On or around November 19, 2015, at or around 1:40 p.m. in the Bronx, New York, Richard Turk, Keith Perisco, Daniel Evans, Steven Barone, and Peter Kummerfeldt (together, the "federal defendants") arrested the plaintiff. SAC ¶ 14. At the time of the plaintiff's arrest the federal defendants were working as part of a joint task force (the "Task Force") operated by the Department of Homeland Security ("DHS"), Drug Enforcement Administration ("DEA"), and the Drug Task Force of the City of New York. Id. ¶¶ 5-9. Subsequent to his arrest, at or around 2:14 p.m., the plaintiff consented to the federal defendants' search of the plaintiff's motel room in the Howard Johnson Inn, located at 1300 Sedgwick Avenue in the Bronx. Id. ¶ 17.

At the time of his arrest, the plaintiff had the following possessions in his motel room: two pairs of sneakers; three pairs of pants; three shirts; two sweat suits; several pairs of socks, underwear, and t-shirts; a set of thermal underwear;

4

various hygiene products; an iPod with headphones; a cell phone and charger; and approximately $4,800 in U.S. currency. Id. ¶ 15. Each of these items was removed from the plaintiff's motel room. See id. ¶¶ 16, 25. The plaintiff did not receive a property voucher for these items, and none of these items have been returned to the plaintiff. Id. ¶ 16.

The plaintiff was subsequently convicted of Criminal Possession of a Controlled Substance in the Second Degree, New York Penal Law § 220.18. Id. ¶ 3. The plaintiff was never notified that any of the personal items seized in conjunction with his arrest were being held as evidence or as the proceeds of an offense. Id. ¶ 18. The plaintiff further represents that none of these items, including the currency, furthered the facilitation of the offense for which he was convicted. Id. On March 14, 2016, the plaintiff was sentenced to three years imprisonment, to be followed by five years of supervised release. Id. ¶ 3.

The day after the plaintiff's conviction, on March 15, 2016, the plaintiff signed a Complaint naming Bratton, the Bronx Drug Enforcement Task Force, Homeland Security Investigations, Turk, Agent Keith Fernando, and Bronx Assistant District Attorney Jordan Rubin as defendants. Compl. (Dkt. 1). On June 1, 2016, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the Court replaced the Bronx Drug Enforcement Task Force as a party

with the City; dismissed claims against Homeland Security Investigations and Bronx Assistant District Attorney Rubin under the doctrines of sovereign and prosecutorial immunity, respectively; and dismissed the plaintiff's claims for false arrest and malicious prosecution due to his valid conviction in the underlying criminal case. Dkt. 8.

The plaintiff amended the Complaint on March 7, 2017. Dkt. 39 (the "Amended Complaint"). The Amended Complaint removed Agent Fernando, and named Bratton, Turk, Perisco, and two John Doe defendants. On May 3, 2017, after identifying the John Doe defendants and receiving permission from the Court to add Evans as a defendant, the plaintiff filed the SAC.

Liberally construed, the SAC alleges claims for unconstitutional deprivation of property under the Fifth and Fourteenth Amendments, including a claim for municipal liability against the City; racial discrimination in violation of the equal protection rights afforded by the Fifth Amendment; malicious abuse of process and other state law torts; and conspiracy to violate the plaintiff's civil rights. The plaintiff seeks damages for these claims. The defendants now move to dismiss the SAC. Bratton and the City are represented by the Corporation Counsel of the City of New York, and the federal defendants are represented by the United States Attorney for the Southern District of New York.

6

The plaintiff brings several constitutional claims under 42 U.S.C. § 1983 and several state law claims against Bratton and the City. The plaintiff alleges that Bratton's and the City's failure properly to train and supervise the federal defendants directly resulted in the unconstitutional deprivation of his property in contravention of the Due Process Clause of the Fourteenth Amendment and state tort laws. The plaintiff alleges these claims against Bratton in his personal and official capacities, and against the City under a theory of municipal liability.

**A.**

Bratton and the City move to dismiss Bratton as a defendant. They argue that the plaintiff has failed to allege the requisite personal involvement necessary for a supervisory official to be liable for damages for a constitutional violation committed by subordinates.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Spavone v. New York State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013) (quoting Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)). The personal involvement of a supervisory defendant can

be shown in a variety of ways. See Colon, 58 F.3d at 873; Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997).

The only specific allegations against Bratton in the SAC allege that Bratton failed to properly train and supervise the Task Force. See SAC ¶¶ 10, 20, 22, 23. The SAC contains no factual allegations plausibly suggesting that Bratton, personally, was grossly negligent in supervising or training the Task Force, or was otherwise personally involved in any failure to train. The plaintiff's conclusory allegations that, as the New York City Police Commissioner, Bratton was responsible for training and supervising the Task Force --- and was therefore negligent for its misdeeds, if any --- does not suffice to state a claim against Bratton. See Colon, 58 F.3d at 874 ("The bare fact that [the defendant Commissioner of the New York Department of Correctional services] occupies a high position in the New York prison hierarchy is insufficient to sustain [the plaintiff's] claim[,]" or a finding of gross negligence by the defendant).

Because the plaintiff "has failed to allege that [Bratton] was personally responsible" for the constitutional wrongs alleged, Bratton cannot be liable for damages, the only relief the plaintiff seeks. Pettus v. Morgenthau, 554 F.3d 293, 300 (2d Cir. 2009); see Sealy, 116 F.3d at 51 (dismissing claims against the Commissioner of the New York State Department of

Correctional Services because the plaintiff had not demonstrated the "requisite personal involvement"); Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985) (dismissing damages claim against prison officials because there was insufficient personal involvement in the constitutional wrongs alleged).

Thus, each of the plaintiff's claims against Bratton are **dismissed**.

B.

To the extent the plaintiff alleges state law tort claims against the City and Bratton, such claims also fail. Under New York law, a notice of claim is a condition precedent to bringing a claim against a municipality or an officer, appointee, or employee thereof. See New York Gen. Mun. Law § 50-e (McKinney 1986); O'Brien v. City of Syracuse, 429 N.E.2d 1158, 1160 (N.Y. 1981). The notice of claim must state the nature of the claim and be served within 90 days after the claim arises. N.Y. Gen. Mun. Law § 50-e(1)(b) and (2). The notice of claim requirements also apply to state tort claims brought as pendent claims in a federal civil rights action. Fincher v. Cty. of Westchester, 979 F. Supp. 989, 1002 (S.D.N.Y. 1997). To comply with the notice requirement:

> a plaintiff [must] plead in the complaint that: (1) the plaintiff has served the notice of claim; (2) at least thirty days have elapsed since the notice was filed (and before the complaint was filed); and (3) in that time

the defendant has neglected to or refused to adjust or to satisfy the claim.

Hardy v. New York City Health & Hosp. Corp., 164 F.3d 789, 793 (2d Cir. 1999). In this case, the plaintiff has not pleaded compliance with the requirements of General Municipal Law § 50-e.

Any state law tort causes of action against the City and Bratton thus fail and are therefore **dismissed**.[3]

## C.

The SAC also alleges a Monell claim under § 1983 against the City for failure to train and supervise the Task Force, resulting in the deprivation of the plaintiff's property in violation of the Due Process Clause of Fourteenth Amendment. See SAC ¶¶ 10, 21. Under Monell, municipalities like the City may be liable for damages under § 1983 for injuries inflicted pursuant to a government policy or custom. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 810 (1985). A plaintiff may establish the existence of a municipal policy or custom by showing the municipality failed to train its employees properly such that "'the failure to train amounts to deliberate indifference to the rights' of those with whom municipal employees will come into

---

[3] As the City points out, to the extent the plaintiff alleges a claim for negligent hiring and retention against the City, that claim must also be dismissed for failure to comply with the notice requirements of § 50-e.

10

contact." Walker v. City of New York, 974 F.2d 293, 297 (2d Cir. 1992) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)).

Because "neither Monell . . . nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm," the threshold issue for this claim is whether the plaintiff suffered the deprivation of constitutional rights he alleges. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam); see Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002).

The plaintiff alleges that he suffered a deprivation of his property without due process. However, "[t]he Due Process Clause does not protect against all deprivations of constitutionally protected interests in life, liberty, or property, 'only against deprivations without due process of law.'" Rivera-Powell v. New York City Bd. of Elections, 470 F.3d 458, 464-65 (2d Cir. 2006) (quoting Parratt v. Taylor, 451 U.S. 527, 537 (1981), overruled in part on other grounds by, Daniels v. Williams, 474 U.S. 327, 330-31 (1986)). "When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." Hellenic

11

Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996) (citing Hudson v. Palmer, 468 U.S. 517, 532 (1984); Parratt, 451 U.S. at 541). Where a claim is based on random, unauthorized acts by state employees, the Due Process Clause of the Fourteenth Amendment is not violated "so long as the state provides a meaningful postdeprivation remedy." Hellenic, 101 F.3d at 880 (citing Hudson, 468, U.S. at 531, 533).

Here, the deprivation of property suffered by the plaintiff was based on random, unauthorized acts by the federal defendants. New York City Rules and Regulations provide:

> A person is entitled to receive a voucher at the time of his or her arrest for property taken or obtained from his or her person or possession, and the other procedures set forth in these rules shall apply, regardless of whether the property has been denominated by the police department as "arrest evidence" or otherwise, and regardless of whether the arrest is prior to, simultaneous with, or subsequent to the taking or obtaining of the property.

New York City, N.Y., Rules, Tit. 38, § 12-32(d). The plaintiff alleges that he received no property voucher. SAC ¶ 16. Thus, the plaintiff alleges the federal defendants failed to follow New York City Rules and Regulations § 12- 32(d). Such a deprivation is a random and unauthorized act. See also Tuttle, 471 U.S. at 823-24 (proof of a single incident of unconstitutional activity alone is not sufficient to establish the existence of a municipal policy or custom).

The deprivation of the plaintiff's property only violated the Due Process Clause of the Fourteenth Amendment if there was no "meaningful postdeprivation remedy." Hellenic, 101 F.3d at 880. But here the plaintiff had access to meaningful postdeprivation remedies, such as state law causes of action for negligence, replevin, or conversion. See Dove v. City of New York, No. 99-cv-3020, 2000 WL 342682, at *3 (S.D.N.Y. Mar. 30, 2000) (Chin, J.) (dismissing a deprivation of property claim under § 1983 "[b]ecause New York provides an adequate post-deprivation remedy in the form of state law causes of action for negligence, replevin, or conversion"); Mejia v. New York City Dep't of Corr., No. 96-cv-2306, 1999 WL 138306, at *4 (E.D.N.Y. Mar. 5, 1999) ("Moreover, [the plaintiff] has state law causes of action against the City for negligence, replevin or conversion, and such adequate post-deprivation remedies may provide him with compensation for his missing property.") (footnote omitted). Because the plaintiff had access to meaningful postdeprivation remedies, there was no violation of due process.

Without an underlying deprivation of constitutional rights, there can be no municipal liability for the City under Monell. Heller, 475 U.S. at 799 (1986); see Brogdon, 200 F. Supp. 2d at 427 ("There being no constitutional deprivation here, the City

. . . cannot be held liable and the claim against it must be dismissed as well.").

Therefore, the plaintiff's Monell claim against the City is **dismissed**.

## IV.

The plaintiff also alleges claims against the federal defendants, in their individual and official capacities, for violations of the Due Process Clause and his equal protection rights under the Fifth Amendment, malicious abuse of process, and conspiracy to deprive the plaintiff of his civil rights under 42 U.S.C. § 1985.

## A.

First, the plaintiff names the federal defendants in their official capacities. SAC ¶¶ 5-9. These claims fail because "[t]he shield of sovereign immunity protects not only the United States but also its agencies and officers when the latter act in their official capacities." Dotson v. Griesa, 398 F.3d 156, 177 (2d Cir. 2005) (citing FDIC v. Meyer, 510 U.S. 471, 475 (1994)). Because "the United States has not waived its sovereign immunity with respect to claims that its employees have committed constitutional torts," Castro v. United States, 34 F.3d 106, 110 (2d Cir. 1994) (citations omitted), any claims against the federal defendants in their official capacities are **dismissed**.

**B.**

The SAC also alleges a due process claim under the Fifth
Amendment against the federal defendants in their individual
capacities.

Although the plaintiff purports to bring this claim under
§ 1983, that statute does not apply to federal officials. See 42
U.S.C. § 1983; Bivens v. Six Unknown Named Agents of Fed. Bureau
of Narcotics, 456 F.2d 1339, 1347 (2d Cir. 1972) (on remand);
Chodos v. F.B.I., 559 F. Supp. 69, 72 (S.D.N.Y.), aff'd sub
nom., Chodos v. Fed. Bureau of Investigation, Police Dep't City
of New York, 697 F.2d 289 (2d Cir. 1982). Rather, it applies to
officials acting "under color of state law." 42 U.S.C. § 1983.
The plaintiff alleges conclusorily that the federal defendants
were acting under color of state law. SAC ¶ 2. "To have acted
under color of state law, the § 1983 defendant must 'have
exercised power "possessed by virtue of state law and made
possible only because the wrongdoer is clothed with the
authority of state law."'" Pou v. U.S. Drug Enf't Admin., 923 F.
Supp. 573, 579 (S.D.N.Y. 1996) (quoting West v. Atkins, 487 U.S.
42, 49 (1988)), aff'd sub nom. Pou v. Loszynski, 107 F.3d 3 (2d
Cir. 1997). "A federal officer who conspires with a state
officer may act under color of state law[;]" however, "since
federal officials typically act under color of federal law, they
are rarely deemed to have acted under color of state law." Arar

15

v. Ashcroft, 585 F.3d 559, 568 (2d Cir. 2009) (internal quotation marks and citations omitted).

The SAC alleges that the federal defendants were "part of a joint 'Task Force' operation identified as the Department of Homeland Security, Drug Enforcement [Administration], and Drug Task Force of the City of New York." SAC ¶¶ 5-9. Such a task force was acting pursuant to federal, not state, law. See Pou, 923 F. Supp. at 579 (New York State Police Officers acting as part of a DEA task force were not acting under color of state law).

The federal defendants are liable for the constitutional claim alleged, if at all, under Bivens v. Six Unknown Names Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971); see Tavarez v. Reno, 54 F.3d 109, 109-10 (2d Cir. 1995) (per curiam). Under Bivens, courts have recognized causes of action for damages against individual federal officials for certain unlawful conduct. Because "the [Supreme] Court has made clear that expanding the Bivens remedy is now a 'disfavored' judicial activity," when confronted with claim under Bivens, a district court must first determine whether a Bivens action encompassing that claim has already been recognized, or whether the claim presents a potentially new context. Ziglar v. Abbasi, 137 S. Ct. 1843, 1857 (2017) (quoting Iqbal, 556 U.S. at 675). "If the case is different in a meaningful way from previous Bivens cases

16

decided by [the Supreme] Court, then the context is new."
Abbasi, 137 S. Ct. at 1859. If the context is new, the district
court must determine whether there are "special factors
counselling hesitation." Id. at 1857. Although the Supreme Court
has not enumerated each of those "special factors," "if there
are sound reasons to think Congress might doubt the efficacy or
necessity of a damages remedy as part of the system for
enforcing the law and correcting a wrong, the courts must
refrain from creating the remedy" out of respect for the
separation of powers. Id. at 1858. Further, "if there is an
alternative remedial structure present in a certain case, that
alone may limit the power of the Judiciary to infer a new Bivens
cause of action." Id.

In this case, the plaintiff asserts a claim under the Due
Process Clause of the Fifth Amendment arising from the alleged
confiscation and failure to voucher or return the property
seized in conjunction with his arrest. Such a claim is
"different in a meaningful way" from the three causes of action
the Supreme Court has previously recognized under Bivens: "a
claim against FBI agents for handcuffing a man in his own home
without a warrant; a claim against a Congressman for firing his
female secretary; and a claim against prison officials for
failure to treat an inmate's asthma." Id. at 1860 (citing
Bivens, 403 U.S. 388; Davis v. Passman, 442 U.S. 228 (1979);

Chappell v. Wallace, 462 U.S. 296 (1983)). Thus, the context is new. The Court must therefore determine whether "special factors" counsel hesitation.

As the federal defendants point out, Congress has established an "alternative remedial structure" to protect the plaintiff's property interest underlying his claim. See Abbasi, 137 S. Ct. at 1858. Pursuant to 31 U.S.C. § 3724, "[t]he Attorney General may settle, for not more than $50,000 in any one case, a claim for . . . damage to, or loss of, privately owned property, caused by an investigative or law enforcement officer . . . acting within the scope of employment . . . ." 31 U.S.C. § 3724(a); see also 31 U.S.C. § 3723(a) (providing that the "head of an agency . . . may settle a claim for not more than $1,000 for damage to, or loss of, privately owned property that-- . . . is caused by the negligence of an officer or employee of the United States Government acting within the scope of employment;"). Both §§ 3724 and 3723 exclude claims that may be settled under the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq.[4] That a plaintiff "might not be able to recover under these remedies the full amount" the plaintiff could recover

---

[4] The Federal Tort Claims Act generally excludes claims arising in respect of "the detention of any goods, merchandise, or other property by . . . any . . . law enforcement officer . . . ." 28 U.S.C.A. § 2680(c). If the Federal Tort Claims Act did provide a remedy, it would be an alternative remedial scheme.

under a Bivens-type remedy is not determinative of the adequacy of the remedy. Stuto v. Fleishman, 164 F.3d 820, 825 (2d Cir. 1999) (internal quotation marks and citation omitted). Here, however, it appears likely that the $50,000 cap under § 3724 would be more than sufficient to compensate the plaintiff.

The existence of an alternative remedial scheme counsels against recognizing a Bivens remedy for the plaintiff's due process claim against the federal defendants.

In addition, there is no underlying due process violation for which a Bivens action could provide a remedy. There is an adequate postdeprivation remedy under 31 U.S.C. § 3724 for the underlying deprivation of property because the deprivation of property the plaintiff complains of was random and unauthorized. See, e.g., Lewis v. Weiss, No. 12-cv-07242, 2016 WL 1718251, at *7 (S.D.N.Y. Apr. 27, 2016) ("As numerous courts have found, the procedure provided by § 3724 is adequate to preclude a Bivens claim for a due process violation.") (quoting D'Amario v. United States, 56 F. Supp. 3d 249, 255 (W.D.N.Y. 2014)). Thus, not only does the existence of this alternative remedial scheme caution against the recognition of a new Bivens action, it also extinguishes the underlying due process claim. See id. ("Because there is a postdeprivation remedy available [in § 3724], Plaintiff does not state a claim for violation of her Due

Process rights" under the Fifth Amendment); Stuto, 164 F.3d at 825.

The plaintiff's due process claim against the federal defendants is therefore **dismissed**.

### C.

Likewise, the plaintiff's claim that the federal defendants violated his equal protection rights afforded by the Fifth Amendment fails because the plaintiff has not adequately pleaded a claim for racial discrimination.[5]

As the Supreme Court explained in Iqbal, "[w]here the claim is invidious discrimination in contravention of the First and Fifth Amendments, our decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose." Iqbal, 556 U.S. at 676. Here, the only assertions underlying the plaintiff's claim of racial discrimination is that the plaintiff, who is Mexican-American, was the target of "biased-based profiling," and that he was "taken advantage of, due to his Ethnicity, and residence in Arizona." SAC ¶ 24. Such conclusory assertions are not

---

[5] The federal defendants argue that an equal protection claim for racial discrimination differs "in a meaningful way" from the equal protection claim based on sex discrimination recognized in Passman, 442 U.S. 228, meaning that no Bivens remedy exists for the plaintiff's claim. Because the plaintiff fails to state a claim for racial discrimination, it is unnecessary to reach this argument.

sufficient to sustain a claim for racial discrimination, and the SAC contains no other facts plausibly suggesting that the federal defendants acted with a racially discriminatory purpose.

The plaintiff's equal protection claim under the Fifth Amendment is therefore **dismissed**.

**D.**

The plaintiff also alleges a claim for malicious abuse of process against the federal defendants.

To state a claim for malicious abuse of process, a plaintiff must demonstrate the defendants "(1) [employed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994) (citations omitted). The plaintiff's claim for abuse of process ostensibly arises from the falsified "recovery of physical evidence" the plaintiff alleges with respect to the federal defendants. SAC ¶ 12. Because the federal defendants were not acting under color of state law, the plaintiff's claim lies, if at all, under Bivens.

However, there is no cause of action for abuse of process under Bivens. The Court of Appeals for the Second Circuit has "never recognized a Bivens cause of action for abuse of

process." See Morales v. City of New York, 752 F.3d 234, 238 (2d Cir. 2014) (declining to recognize a new Bivens claim for malicious abuse of process) (citation omitted).

Moreover, the plaintiff fails to allege any "regularly issued legal process" improperly used. To the contrary, the plaintiff admits that he signed a consent form allowing the federal defendants to search his motel room. SAC ¶ 17. Without some factual allegation that the federal defendants employed any regularly issued legal process toward an improper collateral objective, the SAC fails to plead a claim for malicious abuse of process.

The plaintiff's malicious abuse of process claim against the federal defendants is therefore **dismissed.**

### E.

The plaintiff also alleges that the federal defendants entered into a conspiracy to deprive the plaintiff of his civil rights afforded by the United States and New York State Constitutions. See SAC ¶ 11. The Court construes the plaintiff's claim under 42 U.S.C. § 1985(3). The federal defendants argue that the plaintiff failed adequately to plead a claim for conspiracy, and that they are entitled to qualified immunity.

Section 1985(3) prohibits "two or more persons" from "consp[iring] . . . for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of

22

equal privileges and immunities under the laws . . . ." 42 U.S.C. § 1985(3). To state a claim under § 1985(3), "a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999). Sustaining a conspiracy claim under § 1985(3) also requires a plaintiff to "demonstrate an invidiously discriminatory racial animus behind the conspiracy." Fincher, 979 F. Supp. at 1002.

Because "Section 1985(3) provides no substantive rights itself," a deprivation of a constitutional right is a required object of a conspiracy under 1985(3). Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 372 (1979). As discussed above, the plaintiff has not adequately pleaded any underlying violation of his constitutional rights. For this reason alone the plaintiff has not adequately stated a claim for a violation of § 1985(3).

Moreover, the SAC fails to plead a conspiracy under § 1985(3). First, stating a claim for conspiracy under § 1985, requires a plaintiff to "do more than merely state vague and conclusionary allegations respecting the existence of a

23

conspiracy." Powell v. Workmen's Comp. Bd. of State of New York, 327 F.2d 131, 137 (2d Cir. 1964); see Burns v. City of Utica, 590 F. App'x 44, 50-51 (2d Cir. 2014). "Unsubstantiated, conclusory, vague or general allegations of a conspiracy to deprive constitutional rights are not enough to survive a motion to dismiss." Williams v. Reilly, 743 F. Supp. 168, 173 (S.D.N.Y. 1990) (citation omitted). The SAC does not set forth any facts that plausibly suggest an agreement or meeting of the minds among the federal defendants.

Further, the plaintiff has not pleaded any facts plausibly suggesting an "invidiously discriminatory racial animus." Fincher, 979 F. Supp. at 1002. The plaintiff alleges only that the federal defendants used "bias-based profiling" and that the plaintiff was taken advantage of because he is Mexican-American. As discussed above, such conclusory accusations are insufficient to allege a discriminatory purpose. As with allegations of a conspiracy based on "only conclusory allegations that the defendants violated [the plaintiff's] rights 'because of their discriminatory intent' and 'based on his race and color,'" a naked allegation of "biased-based profiling" also fails to establish the necessary animus for a conspiracy under § 1985(3). See Morales, 752 F.3d at 238 (citation omitted).

Because the plaintiff has failed adequately to plead a claim for conspiracy, it is unnecessary to decide whether the federal defendants would be entitled to qualified immunity.

The plaintiff's claim for conspiracy under 42 U.S.C. § 1985(3) is therefore **dismissed.**

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed above, the arguments are either moot or without merit. For the foregoing reasons, the defendants' motion is **granted.** The Clerk is directed to enter judgment dismissing this case. The Clerk is also directed to close all pending motions.

**SO ORDERED.**

**Dated:     New York, New York**
**          November 27, 2017**

John G. Koeltl
United States District Judge